UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------X
CENTRAL UTA OF MONSEY, et al.,

                                                                    Docket No.:
                                              Plaintiffs,           18-CV-11103 (VB)

        -against-

VILLAGE OF AIRMONT, NEW YORK, et al.,

                                              Defendants.
-------------------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT
OF DISTRICT DEFENDANTS' MOTION TO DISMISS**


*Of Counsel:*    *Lewis R. Silverman, Esq.*
                 *Karen C. Rudnicki, Esq.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………....ii

PRELIMINARY STATEMENT…………………………………………………………...1

STATEMENT OF PERTINENT FACTS…………………………………………………...3

STANDARD OF REVIEW……………………………………………………………......5

ARGUMENT……………………………………………………………………………….5

POINT I

PLAINTIFFS' RLUIPA CLAIMS DO NOT LIE AGAINST THE DISTRICT.........5

POINT II

PLAINTIFFS' FEDERAL CLAIMS ARE INADEQUATELY ALLEGED................7

    A. The Plaintiffs Fail to State a Violation of Their Right to Free Exercise of Religion.........................................................................................................7

    B. The Plaintiffs Fail to State an Equal Protection Violation.........................11

POINT III

PLAINTIFFS FAIL TO STATE MONELL LIABILITY ……………….....................12

POINT IV

PLAINTIFFS CANNOT RAISE A NEW YORK CONSTITUTION CLAIM.........15

POINT V

DR. ADAMS IS ENTITLED TO QUALIFIED IMMUNITY......................................16

CONCLUSION…………………………………………………………………………….17

# TABLE OF AUTHORITIES

## Cases

Adickes v. S.H. Kress & Co.,
398 U.S. 144 (1970) ................................................................................. 14

Anderson v. Creighton,
483 U.S. 635 (1987) ................................................................................. 17

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ................................................................................... 5

Back v. Hastings-on-Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004) .................................................................... 16

Batista v. Rodriguez,
702 F.2d 393 (2d Cir.1983) ..................................................................... 14

Bd. of Cnty. Comm'rs v. Brown,
520 U.S. 397 (1997) ................................................................................. 13

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 ............................................................................................... 5

Benitz v. Wolff,
985 F.2d 662 (2d Cir. 1993) .................................................................... 17

Bizzarro v. Miranda,
394 F.3d 82 (2d Cir. 2005) ...................................................................... 11

Bollenbach v. Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist.,
659 F. Supp. 1450 (S.D.N.Y. 1987) ........................................................ 10

Brass v. Am. Film Tech., Inc.,
987 F.2d 142 (2d Cir. 1993) ...................................................................... 5

Brtalik v. South Huntington Union Free Sch. Dist.,
2010 U.S. Dist. LEXIS 107373 (E.D.N.Y. 2010) ................................... 16

Bronx Household of Faith v. Bd. of Educ. of City of New York,
750 F.3d 184 (2d Cir. 2014) ................................................................. 8, 9

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
508 U.S. 520 (1993) ................................................................................... 9

Clayton v. City of Poughkeepsie,
    2007 WL 2154196 (S.D.N.Y. 2007) ........................................................ 15

Coakley v. Jaffe,
    49 F.Supp.2d 615 (S.D.N.Y.1999) .......................................................... 2

Cook v. Griffin,
    47 A.D.2d 23 (1975) ............................................................................ 6

Cortec Industries, Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) ................................................................... 5

Davis v. City of New York,
    228 F.Supp.2d 327 (S.D.N.Y. 2002) ..................................................... 13

DeRaffele v. City of New Rochelle,
    2017 WL 2560008 (S.D.N.Y.) .............................................................. 12

G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.,
    915 F. Supp. 2d 268 (E.D.N.Y. 2012) .................................................. 16

Gebhardt v. Allspect, Inc.,
    96 F.Supp.2d 331 (S.D.N.Y. 2000) ....................................................... 5

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) ...................................................................... 16, 17

Jones v. Westchester Cty.,
    182 F. Supp. 3d 134 (S.D.N.Y. 2016) .................................................. 14

Kadrmas v. Dickinson Pub. Sch.,
    487 U.S. 450 (1988) ........................................................................... 12

Kaminsky v. Rosenblum,
    929 F.2d 922 (2d Cir. 1991) ................................................................ 17

Manbeck v. Katonah-Lewisboro Sch. Dist.,
    435 F. Supp. 2d 273 (S.D.N.Y. 2006) .................................................. 12

Manbeck v. Micka,
    640 F. Supp. 2d 351, (S.D.N.Y. 2009) ................................................... 2

Monell v. Dep't of Soc. Servs. of City of New York,
    436 U.S. 658 (1978) ...................................................................... 12, 13

Morris v. New York State Police,
    268 F. Supp. 3d 342 (N.D.N.Y. 2017) ................................................................. 15

Newton v. City of New York,
    566 F.Supp.2d 256 (S.D.N.Y. 2008) ................................................................... 13

Okoh v. Sullivan,
    441 F. App'x 813 (2d Cir. 2011) ......................................................................... 11

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) ............................................................................................. 13

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011) ................................................................ 14

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1988) ............................................................................................. 14

Roe v. City of Waterbury,
    542 F.3d 31 (2d Cir. 2008) .................................................................................. 14

Scalpi v. Town of E. Fishkill,
    2016 WL 858955 (S.D.N.Y. 2016) ..................................................................... 13

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006) ................................................................................ 12

Thomas v. Westchester County,
    2013 WL 3357171 (S.D.N.Y.) ............................................................................ 12

Ware v. Valley Stream High Sch. Dist.,
    75 N.Y.2d 114 (1989) ............................................................................................ 7

Wisconsin v. Yoder,
    406 U.S. 205 (1972) ............................................................................................. 10

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007) ................................................................................ 14

Ying Jing Gan v. The City of New York,
    966 F.2d 522 (2d Cir. 1993) ................................................................................ 17

## Statutes

42 U.S.C. § 1983 .................................................................................................Passim
42 U.S.C. §§ 2000cc to 2000cc-5 ................................................................ 6
Article I, § 6 of the New York Constitution ................................................ 15
N.Y. Educ. Law § 3813 .......................................................................... 15, 16
N.Y. Educ. Law § 807-a ................................................................................ 8
N.Y. Educ. Law § 1709 ................................................................................. 6
N.Y. Gen. Mun. Law § 50-i ........................................................................ 16

## Rules

FRCP Rules 8(a) .......................................................................................... 2
FRCP Rule 10(b) .......................................................................................... 2
FRCP Rule12(b)(6) ...................................................................................... 1

## PRELIMINARY STATEMENT

The defendants, the Suffern Central School District and Douglas S. Adams (hereinafter "the District Defendants"), by and through their attorneys, SILVERMAN & ASSOCIATES, respectfully submit this Memorandum of Law in support of their Motion to Dismiss, with prejudice, the plaintiffs' Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), and for such other and further relief as this Court deems appropriate.

As is more fully discussed below, the plaintiffs' Complaint as alleged against the District Defendants must be dismissed with prejudice because: (1) the District Defendants are not liable under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); (2) the Complaint fails to state any plausible violation of the United States Constitution; (3) the Complaint fails to state any plausible claims for Monell municipal liability under 42 U.S.C. § 1983 for violation of the First and/or Fourteenth Amendments; and (4) because this Court should not exercise supplemental jurisdiction over the plaintiffs' New York State law claim. In addition, the District Defendants adopt and incorporate by reference any of the arguments made in favor of dismissal set forth by the co-defendants in their motion to dismiss that may be applicable and dispositive to the plaintiffs' claims.

The Complaint[1] consists of seventy-five pages and 458 numbered paragraphs, many of which contain multiple assertions and conclusory legal claims. The Complaint takes a "shotgun pleading" approach that is a far cry from compliance with the "short and plain statement" required

---

[1] The Complaint is annexed as Exhibit "A" to the Declaration of Lewis R. Silverman in support of the motion to dismiss, April 25, 2019.

by FRCP Rules 8(a) and 10(b).[2] The Complaint "sets forth a potpourri of vague and conclusory allegations" via "the sort of 'shotgun pleading' that illustrates . . . utter disrespect for Rule 8 [of the Federal Rules of Civil Procedure] . . . making it extremely difficult to discern the precise nature of the claim[s]." Manbeck v. Micka, 640 F. Supp. 2d 351, 366, (S.D.N.Y. 2009) (citing Coakley v. Jaffe, 49 F.Supp.2d 615, 625 (S.D.N.Y.1999)).

The voluminous and convoluted nature of the Complaint, however, should not obfuscate the limited issues raised against the District Defendants, or the plaintiffs' failure to adequately and plausibly allege any such claims. This case arises from the plaintiffs' attempts to establish a religious school in the Village of Airmont despite admitted failures to comply with the bare minimum of zoning requirements, namely a certificate of occupancy establishing that the school's buildings are habitable, and fire inspection reports establishing that the students can safely attend the school without risk of being exposed to known and preventable harms. (Complaint, ¶¶ 10, 179, 199, 202, 254, 260, 261, 266, 268, 269, 271, 276, 407). As alleged, any action taken on the part of the District Defendants have been based upon the plaintiffs' failure to comply with Village regulations, and to submit proof of such compliance pursuant to the District's policies. The plaintiffs' overwrought novelization of events is of no moment and cannot be permitted to cloud the important issue at hand. The District will not and cannot ever abdicate its responsibility for the safety of all children in its charge while carrying out its function to transport them to and from the school of their choosing.

---

[2] In this regard, nearly the first few pages of the Complaint and the first ten paragraphs are nothing more than a trial opening statement, i.e., "Undeterred, Airmont continued to deploy overly anti-Semitic tactics..." (Complaint, ¶ 4). The remainder of the Complaint contains similar arguments and precious few plausible factual allegations.

# STATEMENT OF PERTINENT FACTS[3]

The Complaint is voluminous and contains myriad factual assertions and accusations. It is important to separate distinct factual claims that are made against a co-defendant from actions alleged to have been committed by the District. The plaintiffs allege that Suffern Central sent a letter to the Planning Board urging denial of their plans "because the Central UTA students' rights under the New York Education Law to receive textbooks and transportation services would have a negative impact on Suffern Central's budget." (Complaint, ¶ 215). The letter, in full, is attached as Exhibit "B" and plainly states the exact nature of the District's concerns regarding the construction of a school for 2,000 students. The logical, measured, and honest nature of the correspondence stands in stark contrast with the plaintiffs' attempts to frame it as evidence of anti-Semitism. Further, as plaintiffs themselves point out, the local newspapers had carried news of Central UTA's plans to enroll 2,000 students. (Complaint, ¶ 208). Interestingly, the plaintiffs allege the plan to enroll 2,000 students was false (Complaint, ¶ 208), yet bemoan the Village's decision not to find a larger space to accommodate a meeting to review their application for a 2,000-person school. (Complaint, ¶ 211-12). And, despite the plaintiffs' attempt to malign the news source, the story was carried by *The Journal News* and the enrollment information was provided by Central UTA's own attorney, Steven Barshov. (Complaint, ¶ 208); See Exhibit "C." Indeed, as with each and every one of the plaintiffs' assertions, events and timelines are intentionally muddled for the sake of a compelling but entirely disingenuous narrative.[4] The plaintiffs' contradictory claims should not be credited by the Court.

---

[3] The defendants deny the majority of the allegations set forth in the Complaint and assume them to be true only for the purposes of this Motion.

[4] Further examples of this obfuscation include alleging that the Landau family has been denied services for their hearing impaired daughter; that they were provided these services but on District property (Central UTA again not being legally habitable), which they rejected; and that they were provided services, but not an individual to maintain the FM system. (Complaint, ¶¶ 247, 248, 252).

The plaintiffs next allege that the District and Village officials conspired to withhold services from students at Central UTA. (Complaint. ¶ 239, et seq.). As an aside, the plaintiffs do not raise any claim of conspiracy pursuant to § 1983 or § 1985, and their use of the term does not warrant serious legal consideration. Moreover, the entirety of the plaintiffs' allegations of conspiracy rests on the fact that the District Defendants' denial of busing and services was predicated on the plaintiffs' failure to satisfy their statutory obligations. Indeed, the plaintiffs allege the District "took issue" with Central UTA's 2005 certificates of occupancy after the Village instructed them they were invalid (Complaint, ¶ 244) and then again contacted the Village to confirm the validity of additional non-compliant documentation. (Complaint, ¶257-58). Trying to claim this is conspiracy is like saying any two municipal entities simultaneously abiding by the law is conspiracy. Such an argument is devoid of merit.

Furthermore, the plaintiffs allege in an unclear and imprecise manner than they have provided several rounds of documentation, which have still failed to satisfy their requirements under the law. (Complaint, ¶¶ 259-281). Once again, the determination of the legality of the operation of the plaintiffs' school is the sole purview of the Village. Whether the school is legally habitable and legally safe is something over which the District has absolutely no influence. Instead, the District is only legally permitted to provide busing (and to send therapists or other special services) to a school that the Village has determined is safe for human occupation. The plaintiffs' increasingly frantic efforts to have it another way, including, but not limited to, providing altered documents to the District in order to secure busing, cannot be countenanced by the Court, and do not make out any claim of a constitutional violation such that would survive dismissal. (Complaint, ¶ 257); See Exhibit "D."

**STANDARD OF REVIEW**

It is well-settled that a complaint will be dismissed under 12(b)(6) where it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544. 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to make a reasonable inference that the defendant is liable for the alleged misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) In deciding a dismissal on such grounds, the Court is required to accept the material facts alleged in the complaint as true, and to draw all reasonable inferences in the plaintiff's favor. Id. at 678-79. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Unsupported inferences, assumptions, and legal conclusions masquerading as factual conclusions will not be sufficient to prevent a motion to dismiss. Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000). In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993). Indeed, papers may be newly attached to a motion to dismiss where those papers were integral to the plaintiff's complaint, and where the plaintiffs did not lack notice of those documents. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

**ARGUMENT**

**POINT I:  PLAINTIFFS' RLUIPA CLAIMS DO NOT LIE AGAINST THE DISTRICT**

As an initial matter, the plaintiffs' first four causes of action arising out of alleged violations of RLUIPA are not cognizable against the District Defendants. First, the Complaint does not

actually appear to allege any act on the part of the District Defendants which is in contravention of RLIUPA. Furthermore, even if the plaintiffs had explicitly alleged the District Defendants had violated RLUIPA, such a claim would warrant dismissal. A local public school district has no part in land use regulation and, as such, cannot as a matter of law unduly burden or discriminate against an individual, house of worship, or other religious institution in zoning or landmarking laws. 42 U.S.C. §§ 2000cc to 2000cc-5. As statutorily defined, "[t]he term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land..." 42 U.S.C.A. § 2000cc-5. There is simply no reasonable analysis into the scope of a public school district that would conclude it encompasses the passage or application of zoning or landmarking laws. More plainly, although a school district may be considered a governmental entity, it is not a suable entity under RLUIPA. This is supported by the dearth of case law in any circuit where a school district is the defendant in a RLUIPA lawsuit.

Indeed, it is a well-established proposition that a public school district is a creature of statute and has only such powers as are delegated to it by the Legislature; these powers being enumerated in New York Education Law § 1709 and having nothing to do with the grant or denial of municipal building permits, certificates of occupancy, fire inspection reports, or any other matter that would remotely implicate RLIUPA. See Cook v. Griffin, 47 A.D.2d 23, 26 (1975); N.Y. Educ. Law § 1709. It should be noted that no such claim sounding in Education Law has been raised in the Complaint, despite that being the sole legal basis from which a public school's responsibility to provide transportation to non-public school students in the District arises.

Nor is there any case law suggesting that an allegation of conspiracy between a school district and a town somehow acts to circumvent the statutory language of RLUIPA by raising a plausible claim against a school district. For the foregoing reasons, to the extent any RLUIPA

claims are being asserted against the District Defendants, those claims should be dismissed, with prejudice.

## POINT II: PLAINTIFFS' FEDERAL CLAIMS ARE INADEQUATELY ALLEGED

The Complaint contains a total of twelve causes of action, only three of which can be reasonably read to involve the District Defendants. These include the plaintiffs' fifth cause of action asserting a violation of their right to free exercise of religion pursuant to the First and Fourteenth Amendments, and the plaintiffs' tenth cause of action asserting a violation of the Equal Protection Clause of the Fourteenth Amendment.[5] The plaintiffs fail to plausibly allege any federal claim against the District Defendants.

### A. The Plaintiffs Fail to State a Violation of Their Right to Free Exercise of Religion

To the extent the plaintiffs are alleging the District has a custom and practice of delaying and denying Hasidic Jewish students transportation and education services on the basis of religion, that issue is analyzed, *infra*, under the plaintiffs' failure to allege Monell liability. (Complaint, ¶ 377).[6] In regard to the plaintiffs' claim of a violation of their right to free exercise of religion under the First Amendment, and as applied to the states under the Fourteenth Amendment, that claim fails as a matter of law.

Initially, the First Amendment enjoins *the state* from enacting any laws prohibiting the free exercise of religion. Ware v. Valley Stream High Sch. Dist., 75 N.Y.2d 114, 123 (1989) (emphasis

---

[5] The District Defendants reserve their right to address any additional causes of action in their reply papers.

[6] The Court can likewise take judicial notice of the fact that in the 2017-2018 school year, Suffern Central School District provided daily transportation of 5,086 students to 104 schools, 86 of which were non-public, the overwhelming majority of which were Hasidic and Orthodox Jewish schools and yeshivas. In the 2018-2019 school year, the District bused 5,299 students to 115 schools, 98 of which were non-public, the overwhelming majority of which were Hasidic and Orthodox Jewish schools and yeshivas. As is evident from the plaintiffs' Complaint, the difference with Central UTA is neither their religion nor their religious practices, but their failure to provide the most common, universal, and basic evidence establishing the safety of their premises.

added). As previously argued, although a school district is a municipal entity, this is not synonymous with a state empowered to enact laws. Insofar as the plaintiffs are alleging that the requirement to provide a valid certificate of occupancy and fire inspection reports to operate their school is unconstitutional, then that inquiry is appropriately directed to the State. It should be noted that these basic documentary requirements as it pertains to school transportation are established, in part, by N.Y. Education Law § 807-a, set forth in great detail in the New York State Department of Education's Rules for New Nonpublic Schools[7], and further codified in the District's Policies and Regulations. <u>See</u> Exhibit "E." The plaintiffs' allegations that their religious freedoms are being impinged because the District is upholding state law, the rules of the Commissioner of Education, and its own longstanding policy, is legally insupportable. Moreover, the plaintiffs' arguments that the Village is withholding the grant of these documents based upon their religion is entirely separate and apart from their arguments relative to the District.

In addition, the plaintiffs have failed to plausibly allege any action on the part of the District Defendants that could be construed to selectively impose burdens on their religious practices. Instead, the District's policy regarding non-public schools receiving transportation from the District leaves all religions free to engage in whatever religious practices they choose, and only represents a decision by the District's Board of Education to abide by N.Y. Education Law and the edicts of NYSED that ensure the safety of all non-public school students irrespective of religion. <u>See</u> <u>Bronx Household of Faith v. Bd. of Educ. of City of New York</u>, 750 F.3d 184, 192 (2d Cir. 2014).

More pertinently, the language of the District's policy is incontrovertibly neutral. <u>See</u> Exhibit "E." Specifically, paragraph 12 states:

---

[7] Available at http://www.p12.nysed.gov/nonpub/starting/

In order for students enrolled in a non-public school to receive transportation from the District, their non-public school must first be properly registered with the District. Registration can only be completed by making a request to the District in writing and by providing a copy of their current and valid Certificate of Occupancy, current and valid Fire Safety Inspection Report, and NYS BEDS information. All non-public schools registered with the District must comply with all federal and state laws and regulations.

Setting aside for the moment the fact that plaintiffs assume themselves singularly exempt from this requirement without any basis in law, fact, logic, or concern for their children's physical safety, as written, the policy does not implicate any religion, religious practice, or collective activity characteristically done according to an order prescribed by and under the auspices of an organized religion, including such activities not necessarily conducted by an ordained official of the religion. See Bronx Household, 750 F.3d 184 at 192. Rather, it implicates all non-public schools, regardless of denomination, indeed regardless of whether the non-public school is secular or religious.[8] In addressing the constitutional protection for free exercise of religion, a law that is neutral and of general applicability need not be justified by a compelling governmental interest. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993). This is true even if the law has an incidental effect of burdening a particular religious practice. Id. As such, the plaintiffs cannot approach meeting their burden of showing the District's policy is unconstitutional in violation of the First Amendment.

At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. Id. This is true if the object or purpose of a law is the suppression of religion or religious conduct. Id. at 533. However, as regards the District policy at issue, its

---

[8] Of course, in addition to Jewish, Orthodox, and Hasidic private schools, the District also provides transportation under identical guidelines and subject to the identical requirements for various Catholic, Christian, Islamic and non-sectarian schools.

object or purpose, rather obviously, is to abide by the parameters set forth by the state to ensure the safety of a non-public school that exists outside the more stringent regulations to which public schools must abide. This is in order that the public school district may confidently transport their young residents to a location that does not ostensibly jeopardize their well-being, either by virtue of poor construction such that would not qualify for a certificate of occupancy, or by virtue of fire hazard due to the lack of proper inspections. The plaintiffs' continued and utter refusal to comply with these basic requirements imposed on every single non-public school in the District does not make it illegal simply because the refusing party is Hasidic.

The Free Exercise Clause has been interpreted to include both freedom to believe and freedom to act upon those beliefs. Bollenbach v. Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist., 659 F. Supp. 1450, 1467 (S.D.N.Y. 1987). While the freedom to hold religious beliefs is absolute, the freedom to act upon religious beliefs is not. Id. Given its complete neutrality, all the District policy must do to withstand constitutional scrutiny is either 1) not infringe on the Hasidim's free exercise rights, or 2) that any restriction on said rights be justified by a compelling state interest. Wisconsin v. Yoder, 406 U.S. 205, 214 (1972). As previously argued, the policy does not infringe on the plaintiffs' free exercise rights. In order to determine an infringement on the plaintiffs' free exercise rights, the Court must first decide whether the religious beliefs are both sincere and central to an identifiable religious faith. Id. at 215-16. The plaintiffs have not sufficiently alleged how being exempt from District policy for receiving bus transportation is a sincere and central belief. [9] Moreover, the plaintiffs have not sufficiently alleged that complying

---

[9] Of note, the plaintiffs in Bollenbach alleged that the local public school district's transportation scheme, which involved female drivers busing male Hasidic children, violated their religious beliefs on sexual segregation. The Court held that while such an arrangement may infringe upon a sincere and central belief, the deployment of only male bus drivers would violate the Establishment Clause of the First Amendment by transforming a neutral service into a vehicle for promoting the religious tenet that boys must not be in contact with women. Bollenbach, 659 F. Supp. 1450 at 1467.

with the District policy forces the plaintiffs to choose between obeying the tenets of their faith and receiving benefits. Finally, even if the plaintiffs could establish a burden on their free exercise of religion, the District's omnipresent focus on the health and safety of the students in their charge provides a sufficiently compelling government interest to override the plaintiffs' attempts to circumvent state law. For the foregoing reasons, the plaintiffs cannot sustain their First Amendment claim against the District Defendants.

## B. The Plaintiffs Fail to State an Equal Protection Violation

The plaintiffs next allege the District Defendants have deprived "the rights of the Central UTA's students to transportation and special education services from Suffern Central" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Complaint, ¶¶ 433-34). Generally, to state a viable equal protection claim, the plaintiffs must allege that they were selectively adversely treated compared with others similarly situated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Okoh v. Sullivan, 441 F. App'x 813, 814 (2d Cir. 2011). To prevail on such a claim, which are seemingly disfavored and rarely successful, the plaintiffs must prove that the disparate treatment was *caused by* the impermissible motivation. Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005) (emphasis in original). The plaintiffs cannot merely rest on a showing of disparate treatment. Id.

Again, focusing on the plaintiffs' claims as against the District Defendants, the plaintiffs do not adequately allege any disparate treatment or that any disparate treatment was caused by their religion. Instead, the plaintiffs concede they have been informed by the applicable Village authorities that they require certificates of occupancy and fire safety inspection reports in order to

operate their school, namely to safely house students, and that they have thus far failed to do so. The District merely awaits these documents to finalize arrangements.

Moreover, any analysis into the legality of the Village's documentary requirements would likely survive an equal protection attack so long as the challenged requirements are rationally related to a legitimate governmental purpose. Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457–58 (1988). There is no heightened level of analysis for statutes that do not interfere with a fundamental right, and it is well-established that there is no fundamental right to education. Manbeck v. Katonah-Lewisboro Sch. Dist., 435 F. Supp. 2d 273, 276 (S.D.N.Y. 2006), aff'd, 264 F. App'x 61 (2d Cir. 2008). Thus, any purported governmental interference with an individual's access to education is not subject to strict scrutiny. 487 U.S. 450 at 458. As such, given that the Village's requirements are rationally related to the legitimate governmental purpose of keeping students safe, the plaintiffs' equal protection claim would fail as a matter of law.

## POINT III:  PLAINTIFFS FAIL TO STATE MONELL LIABILITY

The missing element in each of the plaintiffs' federal constitutional claims as they relate to the District Defendants is that the Complaint fails to make out a claim for municipal liability under any available theory. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). As municipal liability is a dispositive determination by the Court even where, as is not the case here, constitutional violations have been plausibly alleged, we maintain that the plaintiffs' failure to meet their burden as set forth in Monell results in dismissal of all federal constitutional claims.[10]

---

[10] Likewise, to the extent that the Court determines the Complaint does not plausibly allege any constitutional violations against the District Defendants, the Complaint should be dismissed as a Monell claim cannot lie in absence of an underlying constitutional violation. DeRaffele v. City of New Rochelle, 2017 WL 2560008, at *6 (S.D.N.Y.)(citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action ...; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); Thomas v. Westchester County, 2013 WL 3357171, at *6 (S.D.N.Y.) ("Absent an underlying constitutional violation, a Monell claim cannot lie.")

The federal claims raised against the District Defendants are all violations of the United States Constitution which are based upon 42 U.S.C. § 1983. All of the plaintiffs' federal constitutional claims should therefore be dismissed under Monell and its progeny. For a plaintiff "to prevail on [his] § 1983 claim against the District, []he must satisfy the requirements set forth in Monell and its progeny, which adhere to the well-settled principle that 'Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" Scalpi v. Town of E. Fishkill, 2016 WL 858955, at *4 (S.D.N.Y. 2016), appeal dismissed (June 3, 2016) (citing Monell, 436 U.S. at 691).

For a plaintiff to state a plausible claim, a complaint must allege that a municipal policy of some kind caused a constitutional tort, such that it was the "moving force" behind the alleged constitutional violation. Id. at 694-695. "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" Davis v. City of New York, 228 F.Supp.2d 327, 336 (S.D.N.Y. 2002), aff'd, 75 Fed.Appx. 827 (2d Cir.2003). "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." Newton, 566 F.Supp.2d at 271 (internal footnote omitted) (citing Monell, 436 U.S. at 690, and Pembaur, 475 U.S. at 480–81). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ." Id. Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs, 520 U.S. at 404.

To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. See Praprotnik, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law' ") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970) (internal quotation marks omitted)).

Thus, to hold a municipal entity defendant "liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983)); see also Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff can satisfy this policy or custom requirement by plausibly alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Jones v. Westchester Cty., 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016). In addition, a plaintiff must establish a causal link between the municipality's policy, custom or practice and the alleged constitutional injury. Roe, 542 F.3d at 37. The plaintiffs' Complaint fails to plausibly allege liability of the District pursuant to any of these theories.

Separate and apart from the allegations raised against the Village defendants, the Complaint does not contain a single plausible allegation establishing the Monell liability of the

14

District Defendants under any available theory. Instead, the Complaint contains only quintessentially implausible and conclusory claims, such as the allegation that "Suffern Central has a custom and practice of delaying and denying Hasidic Jewish students transportation and education services on the basis of religion." (Complaint, ¶ 377). This is legally insufficient to establish any Monell liability of the District. Instead, the plaintiffs rely upon aggrandizing language, historical allegations against the Village, and righteous indignation to support an otherwise legally insufficient pleading. For the foregoing reasons, the plaintiffs have not raised a single plausible constitutional claim against the District Defendants, and all such claims should be dismissed in their entirety and with prejudice.

**POINT IV: PLAINTIFFS CANNOT RAISE A NEW YORK CONSTITUTION CLAIM**

The plaintiffs appear to allege a violation of the due process clause of Article I, § 6 of the New York Constitution as against the District Defendants. (Complaint, ¶ 443-44). In the event the Court elects to exercise supplemental jurisdiction over the plaintiffs' state law claims, such claims likewise warrant dismissal with prejudice. As an initial matter, as the Complaint also alleges a violation of the Fourteenth Amendment Due Process Clause, the plaintiffs' New York Constitution claim must be dismissed as duplicative. Morris v. New York State Police, 268 F. Supp. 3d 342, 368 (N.D.N.Y. 2017). Numerous courts in this Circuit have repeatedly held that there is no private right of action under the New York State Constitution where remedies are available under § 1983. See e.g., Clayton v. City of Poughkeepsie, 2007 WL 2154196, at *7 (S.D.N.Y. 2007).

Furthermore, the plaintiffs do not, and cannot allege, mandatory compliance with the notice of claim and 50-h examination requirements of New York Municipal and Education Laws. Pursuant to both Section 3813(1) of the New York Education Law and General Municipal Law § 50-i, timely presentation of a notice of claim to the governing body of the District is a condition

precedent to an action based on such a claim against the District. <u>N.Y. Educ. Law 3813(1)</u>; <u>N.Y. Gen. Mun. Law § 50-i</u>. A failure to comply with this condition precedent is a fatal defect. <u>Brtalik v. South Huntington Union Free Sch. Dist.</u>, 2010 U.S. Dist. LEXIS 107373 at * 10-11 (E.D.N.Y. 2010). The presentation of a notice of claim must be made within three months after the accrual of such claim. <u>N.Y. Educ. Law 3813(1)</u>. A party may make an application to file a late notice of claim, but such extension shall not exceed the time limited for the commencement of an action by the claimant against any district. <u>N.Y. Educ. Law 3813(2-a)</u>. As a consequence, the plaintiffs' failure to file a notice of claim or appear for a 50-h examination is fatal to their state law causes of action, including those arising out of the New York State Constitution. <u>G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.</u>, 915 F. Supp. 2d 268, 280–81 (E.D.N.Y. 2012). For the foregoing reason, the plaintiffs' state law due process claim should be dismissed.

### POINT V: DR. ADAMS IS ENTITLED TO QUALIFIED IMMUNITY[11]

Even if the plaintiffs' Complaint could be construed to contain facts sufficient to plausibly suggest that Dr. Adams was personally involved in the infringement of the plaintiffs' rights, he should nevertheless be shielded from suit by the doctrine of qualified immunity. Public officials such as the individually named defendant are shielded by qualified immunity from liability for damages that relate to their performance of discretionary official functions, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

---

[11] Additionally, to establish an individual liability of a defendant under § 1983, the plaintiff must demonstrate that the defendant was personally involved in the alleged constitutional violation. <u>Back v. Hastings-on-Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004). However, the plaintiff has entirely failed to allege any personal involvement of Dr. Adams in any alleged constitutional violations, and he should be dismissed as a party to this action.

The availability of the defense turns on the "objective legal reasonableness" of the allegedly unlawful action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987), *quoting,* Harlow, 457 U.S. at 818-19); See Benitz v. Wolff, 985 F.2d 662, 666 (2d Cir. 1993); Ying Jing Gan v. The City of New York, 966 F.2d 522, 531 (2d Cir. 1993). Even if the constitutional right in question is clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). In the instant case, the question to be addressed is what, if any, "clearly established right" of the plaintiff was violated and whether the defendant would have understood that his conduct was unlawful. The defendants maintain that the plaintiffs have no clearly established right to be exempt from legal requirements ensuring the health, safety, and well-being of the students residing in the District, and that the individual defendant would never have understood his conduct to be unlawful. For the foregoing reasons, Dr. Adams is entitled to qualified immunity, and the claims against him should be dismissed.

## CONCLUSION

For all the foregoing reasons, the District Defendants respectfully request that its motion be granted in its entirety and that the plaintiffs' Complaint be dismissed as a matter of law, with prejudice, and for such other and further relief as this Court deems appropriate. In the event that the Court denies the instant motion in whole or in part, the District Defendants respectfully request thirty (30) days from the date of the decision to file and serve an Answer to the plaintiffs' Complaint.

Dated: White Plains, New York
April 26, 2019

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

By: *Karen Rudnicki*
_____
Lewis R. Silverman
Karen C. Rudnicki
Attorneys for District Defendants
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510

To:   WHITEMAN OSTERMAN & HANNA LLP
John J. Henry
Robert S. Rosborough
Christine M. Carletta
Attorneys for Plaintiffs
One Commerce Plaza
Albany, New York 12260
(518) 487-7600

FIRST LIBERTY INSTITUTE
Hiram Sasser
Keisha Russell
Attorneys for Plaintiffs
2001 W Plano Pkwy
Suite 1600
Plano, Texas 75075

SOKOLOFF STERN LLP
Leo Dorfman
Attorneys for Village Defendants
179 Westbury Avenue
2nd Floor
Carle Place, New York 11514
(516) 334-4500